# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: J.W.-1, J.W.-2, and L.W.**

**No. 13-0200** (Ohio County 12-CJA-28, 29 and 30)

**FILED**

September 3, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father filed this appeal, by counsel Gerald Jacovetty Jr., from a February 6, 2013 order of the Circuit Court of Ohio County, which terminated his parental and/or custodial rights to his children, J.W.-1, age two; J.W.-2, age seven, and L.W.; age four.[1] The guardian ad litem for the children, Allison Cowden, and the Department of Health and Human Resources ("DHHR"), by its attorney Melinda Dugas, each filed a response supporting the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period and terminating his parental and/or custodial rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner Father is the biological father of J.W.-2 and L.W., and is listed as the father on J.W.-1's birth certificate. Additionally, Petitioner Father was the custodian of all three children at the time these abuse and neglect proceedings were initiated.[2] The biological mother of all the children, R.R., is not a party to this appeal.[3] In September of 2011, the DHHR received a referral after J.W.-1 was born with severe, active withdrawal symptoms. Subsequently, J.W.-1 and R.R., tested positive for THC, opiates, and benzodiazepine. The DHHR conducted an investigation

---

[1]Because this matter concerns infant children, we follow our traditional practice in cases involving sensitive facts and use only the parties' initials. *See State v. Edward Charles L.*, 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990). Because two of the children have the initials J.W., we have identified those children by placing a number after their initials. We also note that the circuit court case numbers listed above correspond with each child in the style of this case.

[2]A DNA test concluded that Dan B. was J.W.-1's biological father. Dan B. voluntarily relinquished his parental rights and is not subject to this appeal.

[3]R.R. voluntarily relinquished her rights to the children and her parental rights were terminated by the circuit court.

1

and, in March of 2012, filed its initial petition alleging abuse and neglect and seeking temporary emergency custody. The DHHR asserted that Petitioner Father committed multiple acts of domestic violence in the presence of the children; abused the children by knowingly or intentionally inflicting physical, mental, or emotional injury; failed or refused to provide proper medical care; neglected the children by failing to provide necessary food, clothing, shelter, supervision, medical care or education; and abused drugs and alcohol, which impaired his parenting skills. On June 29, 2012, the DHHR filed an amended petition to include information concerning Petitioner Father's arrest on federal drug trafficking charges.

At adjudication, Petitioner Father stipulated that he failed to follow up with medical care related to J.W.-1's treatment for clubbed feet and malformed legs, conditions that were present at birth. J.W.-1 was undergoing extensive medical care under the direction of a pediatric orthopedic surgeon in Pittsburgh, Pennsylvania. As part of her treatment, J.W.-1 was to attend weekly casting appointments, wherein casts were to be applied to her lower extremities in preparation for subsequent surgeries to correct the conditions in her legs and feet. Petitioner Father further stipulated that he removed, or assisted in removing, the casts from J.W.-1 without seeking medical treatment from a physician and without the recommendation of a physician, that he used or was under the influence of drugs while caring for the children, and that he committed acts of domestic violence against the children's mother in their presence. The circuit court found that Petitioner Father was an abusing and neglectful parent to the children.

On December 6, 2012, a hearing was held on Petitioner Father's motion for a post-adjudicatory improvement period, after which the circuit court denied Petitioner Father's motion and terminated Petitioner Father's parental and/or custodial rights.[4] In terminating Petitioner Father's parental rights, the circuit court found that aggravated circumstances existed, Petitioner Father failed to acknowledge his responsibility for his actions that led to the filing of the petition, and there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future.

Petitioner Father argues that the circuit court erred in terminating his parental and/or custodial rights to the children because there was sufficient evidence to support his position that the actions that led to the filing of this petition could be substantially corrected in the near future. He asserts that he participated in a de facto improvement period during the pendency of the underlying case, and that by stipulating to his adjudication, he accepted responsibility for the allegations of abuse and neglect. Respondents argue that Petitioner Father failed to take responsibility for his actions, failed to comply with the DHHR, and failed to continue from services that were put into place as early as September of 2011.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts

---

[4]The parties agreed that if the circuit court denied Petitioner Father's motion for a post-adjudicatory improvement period, the hearing and testimony would be converted to a dispositional hearing.

2

without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

First, we address Petitioner Father's contention that the circuit court erred in denying his motion for a post-adjudicatory improvement period. In order to receive an improvement period, a parent must show that he "is likely to fully participate in the improvement period . . . ." W.Va. Code § 49-6-12(b)(2). DHHR child protective service worker Tracy Hamilton testified that she was assigned to the case of J.W.-1, J.W.-2, and L.W. in early April of 2012, soon after the filing of the petition. She assisted Petitioner Father with completing applications for inpatient drug treatment, but he has not engaged in the treatment or followed up on the status of his inpatient drug treatment applications. He underwent treatment for drug addiction for nine days in May of 2012, but left that program against advice. Though Petitioner Father testified he did not want to take Suboxone as part of that program, Ms. Hamilton explained her concern: "[H]e didn't follow through with their recommendations and was so abrupt about it and didn't seek alternative measures for treatment." Ms. Hamilton also testified that Petitioner Father continues to blame R.R. for the problems that led to the filing of this petition. Furthermore, Petitioner Father testified he attends Narcotics Anonymous meetings only when he can fit it into his "busy schedule." Also, Ms. Hamilton arranged individual therapy services at Wellspring Family Services; Petitioner Father attended for three weeks. Despite his testimony that he planned to continue those services, he did not offer any reason for not attending.

The circuit court also heard the testimony of Kim Miller, a social worker with Open Horizons Family Services, where Petitioner Father began receiving services in May of 2012. Between May and October of that year, Petitioner Father missed five scheduled appointments without calling. Ms. Miller testified that Petitioner Father has taken no responsibility for his actions, that he usually blamed biological mother R.R., and that he denied responsibility for the medical neglect of J.W.-1. Petitioner himself testified that he often made false statements to CPS workers during the investigation. These facts, all recognized by the circuit court, indicate that Petitioner Father is highly unlikely to participate fully in an improvement period.

This Court has held that "'courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened . . . .' Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980)." Syl. Pt. 4, in part, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). The circuit court noted that when J.W.-1 was taken into custody, she was "significantly underweight" and had to undergo

extensive medical procedures to correct not only her birth disabilities, "but also the medical neglect in failing to get the appropriate treatment for her condition." The evidence showed that Petitioner Father used drugs, including heroin, in the presence of the children, and J.W.-2 told an interviewer that she found drug paraphernalia, including syringes, needles, and pills in the home. There is further evidence that Petitioner Father and R.R. – each of whom is the subject of a federal indictment on drug trafficking – were held at gunpoint with the children in their home. After the event, however, Petitioner Father took the children to his mother's home before calling the police, then told the responding officer that the children were not present.[5] The record on appeal shows that the children have been subjected to chronic abuse and their welfare has been seriously threatened. We, therefore, find no error in the circuit court's denial of a post-adjudicatory improvement period.

We turn to petitioner's contention that the circuit court erred in terminating Petitioner Father's parental and/or custodial rights. West Virginia Code § 49-6-5(a)(6), in pertinent part, directs that circuit courts shall, "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child, terminate the parental, custodial and guardianship rights and responsibilities of the abusing parent . . . ." For the same reasons explained above, we find the evidence shows no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future. Petitioner Father continually disregarded the safety, well-being, and protection of the children; J.W.-2 found hypodermic needles and pills in the house; the children were present when Petitioner Father was held at gunpoint; and Petitioner Father knowingly removed J.W.-1's casts without medical advice and failed to obtain necessary medical treatment for J.W.-1. Furthermore, he failed to seek appropriate treatment for his drug addiction, sold illegal drugs in the presence of the children, and failed to acknowledge his pattern of domestic violence. Termination was necessary for the children's welfare, and the Court finds no error in the termination of these rights.

For the foregoing reasons, we affirm the circuit court's order.

Affirmed.

**ISSUED:** September 3, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[5] The circumstances of this event revealed Petitioner Father's violation of the DHHR's safety plan.

4